CHARLES M. EVANS *vs.* MAURICE H. O'CONNOR.
SAME *vs.* SAME & another.

Essex.   November 1, 2, 1898. — September 21, 1899.

Present: HOLMES, C. J., LATHROP, BARKER, & HAMMOND, JJ.

*Self-incriminating Testimony — Waiver of Privilege — Alienation of Affections.*

A witness does not, by consenting to testify to acts tending to criminate him, thereby waive his privilege of refusing to testify as to other incriminating acts, which, although material to the issue, are not connected with the act to which he has testified; but he waives the privilege as to other acts so far as the inquiries relative thereto are within the legitimate limits of a cross-examination as to the act to which he has testified.

An action to recover damages for adultery committed by the defendant with the plaintiff's wife is based upon the plaintiff's loss of *consortium*, and the alienation of her affections is not the gist of the action, but is merely a matter of aggravation.

Whether a discontinuance as to one of two defendants charged with unlawful conspiracy is a bar to recovery against the other, *quære*.

TWO ACTIONS OF TORT.   In the action against Maurice H. O'Connor the plaintiff sought to recover damages for adultery alleged to have been committed with his wife, and for the alienation of her affections; in the action against O'Connor and Merrill he sought to recover damages for an alleged unlawful conspiracy of the defendants to debauch the plaintiff's wife and to induce her to commit adultery with the defendant O'Connor.   Writs dated June 11, 1896.

Trial in the Superior Court, before *Lilley*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence for the plaintiff tending to show that on one occasion in August, 1893, while the plaintiff, his wife, and the defendants, with others, were upon a camping trip in New Hampshire, the defendant O'Connor and the plaintiff's wife were seen lying together at about half-past eight in the evening in a public street between the team travelled portion and the stone wall at the side, the plaintiff's wife being clad in what was at first described as a night dress, but which was later explained to be an old wrapper or dress which she used as a night dress in the tents, and called a night dress; that Mrs. Evans at

that time spoke to the witness who testified to seeing her there, and said, " I went in and changed my clothes and put on my night dress, and heard the music, and thought I would come down and hear it "; and that the music referred to was a piano which was being played in a house one hundred or one hundred and fifty yards distant from the point where she and O'Connor were seen together in the road. There was also evidence tending to prove that in the summer of 1894, and again in the summer of 1895, Mrs. Evans and O'Connor registered at a summer hotel in New Hampshire as " M. H. Copeland and wife," and on both occasions occupied the same sleeping-room together for several days.

The wife of the plaintiff, called as a witness for the defence, was asked as to her relations with O'Connor in 1893, and upon being instructed by the judge that she was not obliged to answer if her answer would tend to criminate her, she replied, " I would rather not answer questions on 1894 and 1895, but I would like to prove myself innocent in the year 1893." She was then instructed that if she testified as to matters in 1893, she could be cross-examined fully as to matters occurring in 1894 and 1895, and thereupon declined to testify.

There was further evidence for the plaintiff tending to show that in 1895 the defendant Merrill, who was a brother of the plaintiff's wife, was at the same hotel and at the same time as Mrs. Evans and O'Connor ; that in June of the same year Merrill met O'Connor at the Union Station in Boston, conducted him to the waiting-room, where Mrs. Evans was seated, and left them there together, after which they went out into the street together and disappeared ; that in a conversation between the plaintiff and Merrill the latter, in reply to a question whether there was any truth in the story that Mrs. Evans and O'Connor had been at a hotel in New Hampshire together, said that he did not think it was so, and the talk was a lot of idle gossip, and promised to keep Mrs. Evans away from O'Connor, and in a subsequent conversation between the plaintiff, his wife, and Merrill, after the refusal of Mrs. Evans to return to live with the plaintiff or to see him alone, the plaintiff said : " Well, there must be something in it between you and Will Merrill, or you would allow me to see you alone," to which Merrill replied : " If you

dare me in this manner, Charles Evans, I will pound you."
This was all the material evidence in the case. During the trial
the plaintiff discontinued the second action as to O'Connor.

The defendant Merrill requested the judge to instruct the
jury, 1. That the plaintiff is not entitled to maintain the action
against him. 2. That to entitle the plaintiff to maintain his
action against him he must prove that Merrill induced Mrs.
Evans to commit adultery with O'Connor, or that he alienated
or destroyed her affection for the plaintiff; 3. That the evi-
dence does not warrant a finding that Merrill induced Mrs.
Evans to commit adultery with O'Connor; 4. That the evi-
dence does not warrant a finding that Merrill alienated or de-
stroyed the affections of Mrs. Evans for the plaintiff; 5. That
if O'Connor and Mrs. Evans went to New Hampshire in 1895
for the purpose of committing adultery, and if neither of them
induced Merrill to accompany them, he would not be liable for
so doing, even if his presence and conduct encouraged O'Connor
in their adulterous intercourse if he did not induce Mrs. Evans
to commit adultery, and did not alienate and destroy her affec-
tions for her husband; 6. That if Merrill merely knew and
assented to adultery between Mrs. Evans and O'Connor he
would not be liable; 7. That Merrill is not liable unless he or
O'Connor induced Mrs. Evans to commit adultery with O'Con-
nor, and that if she induced O'Connor to commit adultery, the
defendant Merrill is not liable, although he assisted them in
arranging to commit the crime; 8. That the evidence does not
warrant a finding that O'Connor induced Mrs. Evans to commit
adultery, or that she did not induce him so to do.

The judge gave instructions to the jury in accordance with the
second, fifth, and sixth requests, and refused to give the first,
third, fourth, seventh, and eighth, except so far as they were
contained in his further instructions to the jury. He further
instructed the jury that if certain persons are found acting
concurrently, their concurrent action creates a presumption of
a concurrence of sentiment, and if upon the evidence the jury
were satisfied that O'Connor and Merrill were acting in concur-
rence to induce Mrs. Evans to commit adultery with O'Connor,
and if the natural, usual, and probable consequence of their con-
current action resulted in the commission of such adultery, it

would be competent to infer that it was their common purpose and design to accomplish that result; that if the jury were satisfied of the existence of a common purpose, acts and declarations of either defendant designed to promote the common purpose, although done or said in the absence of the other, would be competent evidence against the other; that the basis of these actions was the alienation of the affections of the plaintiff's wife, and that if Merrill induced her to commit adultery with O'Connor, it was an invasion of the plaintiff's conjugal rights for which he would be liable, as well as for the alienation of her affections if that was the natural, usual, and probable consequence of such adultery, but that if Mrs. Evans solicited or induced O'Connor to have intercourse with her, that fact should be considered on the question of damages in mitigation thereof.

The jury returned a verdict for the plaintiff in each case; and the defendants alleged exceptions.

*B. B. Jones*, for the defendants.

*H. J. Cole*, for the plaintiff.

LATHROP, J.   In these cases the plaintiff relied upon acts of adultery committed by the wife of the plaintiff with the defendant in the first case, in the years 1893, 1894, and 1895.   The evidence as to the act in 1893 was as to one occasion only, and was very slight, though the evidence was abundant as to the acts of 1894 and 1895.

The first exception relates to the ruling of the presiding judge in regard to the right of the wife of the plaintiff to testify.   She was called by the defendants, and desired to testify as to her relations with O'Connor in the year 1893, but not as to those in the years 1894 and 1895.   She was instructed by the judge that if she testified as to matters in 1893, she could be cross-examined fully as to 1894 and 1895.   The witness then declined to testify. We are of opinion that the defendants had a right to the testimony of the witness as to a distinct and separate transaction relied upon by the plaintiff, and that the witness ought to have been allowed to testify as to the year 1893, without waiving her privilege as to the years 1894 and 1895.   *Low* v. *Mitchell*, 18 Maine, 372.   In this case the law is thus stated by Mr. Justice Shepley: " The rule, that a witness is not obliged to criminate himself is well established.   It is contended, however, that if the

witness waives that privilege when testifying to one fact in the cause, he cannot claim it while testifying to any other fact material to the issue. If he consents to testify to one matter tending to criminate himself, he must testify fully in all respects relative to that matter so far as material to the issue. If he waives the privilege, he does so fully in relation to that act. But he does not thereby waive his privilege of refusing to reveal other unlawful acts, wholly unconnected with the act, of which he has spoken, even though they may be material to the issue. His consent to speak of one criminal act cannot deprive him of that protection, which the law affords him so far as respects other criminal acts not connected with it." See also *Lombard v. Mayberry*, 24 Neb. 674, 690. If, however, within the legitimate limits of cross-examination as to the fact testified to, an inquiry is started as to other facts, the witness must be considered as having waived his privilege as to the latter so far as the inquiry as to them is within such limits, and he must answer even though his answers may tend to criminate him. We do not understand the ruling to have been thus limited by the presiding justice.

As the exception applies to both cases, the exceptions must be sustained in each case. It may be well, however, to say a few words on other points in the case. The jury were instructed that the basis of the action was the alienation of the wife's affections. This question was fully considered in *Bigaouette v. Paulet*, 134 Mass. 123, where it was held that alienation of affections is not the gist of the action, but is merely a matter of aggravation; that the husband's right of action is based upon his loss of *consortium*, — " the right to the conjugal fellowship of the wife, to her company, co-operation, and aid in every conjugal relation." We are of opinion, however, that this point is not open to the defendant Merrill. There was no instruction requested in regard to it, and the exceptions to the instructions given were only so far as they varied or modified the instructions requested. See *Commonwealth v. Walsh*, 162 Mass. 242; *Fairman v. Boston & Albany Railroad*, 169 Mass. 170, 174.

The second case was originally brought against both the defendants, and charges them with unlawfully conspiring together to debauch the plaintiff's wife, and to induce her to com-

mit adultéry with the defendant O'Connor. During the trial the plaintiff discontinued as to O'Connor. Whether the plaintiff could recover against Merrill, under those circumstances, we need not consider, as no objection was made. See *May* v. *Wood*, 172 Mass. 11, 13, and cases cited.

Nor need we consider whether the evidence was sufficient to warrant the jury in finding against Merrill, as it may be different on another trial.                     *Exceptions sustained.*