# Richmond

## Frank C. Bruce, Jr. v. Grace M. Madden.

March 4, 1968.

Record No. 6532.

Present, All the Justices.

*Stanley G. Barr, Jr.; Augustus Anninos (Howell, Anninos & Daugherty,* on brief), for plaintiff in error.

*Frederick P. Aucamp (Rixey and Rixey,* on brief), for defendant in error.

Carrico, J., delivered the opinion of the court.

The action which gave rise to this appeal was brought by Frank

C. Bruce, Jr., the plaintiff, against Grace M. Madden, the defendant, to recover damages for personal injuries sustained by the plaintiff when the automobile in which he was a passenger was struck from behind by a vehicle operated by the defendant.

The case was tried before a jury, and at the conclusion of all the evidence, the trial court, upon motion of the plaintiff and over the defendant's objection, struck the defendant's evidence. The only issue remaining to be submitted to the jury, therefore, concerned the amount of damages the plaintiff was entitled to recover for his injuries.

The plaintiff offered an instruction on damages which would have told the jury that it could consider five separate elements listed therein in ascertaining the amount of damages to be awarded the plaintiff. One of those elements was contained in paragraph 4, which was worded as follows: "The mental anguish, if any, the plaintiff has endured as a result of his injuries." The trial court, over the objection of the plaintiff, struck that paragraph from the instruction.

The jury returned a verdict in favor of the plaintiff in the sum of $500.00. Final judgment was entered on the verdict, and the plaintiff was granted a writ of error.

The plaintiff assigns error to the action of the trial court in deleting paragraph 4 from the instruction offered by him. The defendant assigns cross-error to the action of the court in striking her evidence.

The plaintiff's evidence showed that the collision occurred at approximately 6:30 p.m. on July 28, 1965, in the city of Norfolk. The weather was clear, and the road surface was dry. The plaintiff, Bruce, was riding on the right front seat of an automobile being operated by his wife.

When Mrs. Bruce approached Military Highway on an entrance road, she brought her automobile to a stop, responsive to a yield sign and traffic on the main highway. While in this stopped position, the Bruce vehicle was struck from behind by the automobile operated by the defendant. The impact forced the Bruce car forward. The plaintiff was thrown forward and then backward in the car, and his knees were pushed into the dashboard.

The plaintiff was assisted from his vehicle to an ambulance by two police officers. He was taken to a hospital where he remained approximately four hours while being examined and treated by his personal physician, Dr. John S. Thiemeyer, Jr.

Dr. Thiemeyer testified, by way of deposition, that he had treated the plaintiff since 1951 for an injury received in an automobile acci-

dent in that year. In the earlier accident, the plaintiff suffered a fracture of the left acetabulum, or hip socket, and as a result had an osteoarthritic hip. The doctor described the arthritic condition of the plaintiff's hip as "a degenerative change of this hip joint consisting of the degeneration of the joint's surface and arthritic spurs of the joint." The treatment of the plaintiff's condition resulting from the 1951 accident consisted of a monthly injection into the hip joint of Kenalog, a derivative of cortisone.

The doctor further testified that in the 1965 accident, the plaintiff twisted his already-injured hip, causing severe pain and marked loss of motion. X rays of the hip disclosed "no fractures or broken bones about the area." The doctor also stated that X rays of the plaintiff's neck showed that he had sustained a "sprain of the cervical spine," causing "spasm of the muscles and a tearing of the ligaments" in the neck.

The plaintiff was treated by Dr. Thiemeyer for his "neck and hip pain" resulting from the 1965 accident. To treat the neck injury, the doctor instructed the plaintiff to have his wife apply hot compresses to his neck and "rub it down with Ben-Gay." The doctor also told the plaintiff to place boards under the mattress of his bed and to sleep without a pillow. By the end of September, 1965, the injury to the plaintiff's neck had healed.

Treatment for the aggravation of the hip injury consisted of more frequent injections of Kenalog. By June 9, 1966, according to Dr. Thiemeyer, the plaintiff was relieved of the "increased pain" caused by the "flare-up of the difficulty with his hip joint."

The plaintiff testified that before the 1965 accident, the pain in his hip was "very minor" and "was bearable," but after the accident, "it got quite a bit worse." The plaintiff said he had trouble sitting on a chair at home and that he "more or less had to sit on a hard surface." He further said that he "would take far more pain pills" than he "had been used to taking" and that when he had difficulty sleeping, he would, with his wife's assistance, "get up and just try to walk anyway . . . sometimes it helps to walk it out." He also stated that the pain "got to the point I couldn't drive my car at all."

The plaintiff was employed as a checker in the warehouse department of the Texaco Company. He testified that after the accident, he was placed on light duty and, at the time of trial, had not yet reassumed all the duties previously assigned him. He stated that he could not stand for extended periods of time at his work and "would have to sit down." He said that he lost two and one-half days from

work in addition to the time required to visit the doctor's office for the additional injections of Kenalog.

The plaintiff's wife testified that as a result of the accident, her husband had been "rather restless and suffered far more pain than he ever did before." She stated that the plaintiff had been unable to assist her with household duties to the extent he had before the accident. She further said that he "couldn't sleep" and that she "had to get up and get a hot water bottle for him to put on his hips and get the pain capsules for him."

[1] This brings us to a consideration of the trial court's action in striking from the instruction offered by the plaintiff the paragraph relating to mental anguish.

The defendant objected to the disputed paragraph, and the court struck it from the instruction because "there was no evidence upon which this instruction could be based." In her brief, the defendant seeks to sustain her position and the action of the trial court by saying, "The record shows that there was no direct evidence of mental anguish or suffering at the trial."

The plaintiff, on the other hand, contended in the trial court and contends here that the jury, from the evidence before it, could have inferred that he endured mental anguish as the result of the injuries sustained in the accident of July, 1965. It was error, therefore, the plaintiff says, for the trial court to strike from the instruction offered by him the paragraph which would have permitted the jury to consider mental anguish as an element of damages.

With the plaintiff we agree. In *Norfolk, &c. Ry. Co.* v. *Marpole*, 97 Va. 594, 599, 34 S. E. 462, 464 (1899), we considered an instruction which had been granted by the trial court and which had been objected to because "it allowed the jury, without special proof, in fixing the plaintiff's damages, to take into consideration his mental suffering." We held that there was no error in the granting of the instruction and cited with approval the holding in the case of *Brown* v. *The Hannibal & St. J. R. Co.*, 99 Mo. 310, 12 S. W. 665 (1889), where it was stated:

" . . . Physical pain and mental anguish usually, and to some extent, necessarily flow from, or attend, bodily injuries. It is not necessary to make specific proof of pain and mental anguish. These elements of damages are sufficiently shown by the evidence which discloses the nature, character and extent of the injuries. From

such evidence *the jury may infer pain and mental anguish.*" [Emphasis added.] 99 Mo., at 318-319, 12 S. W., at 656.

In *So. Bell, &c. Co.* v. *Clements,* 98 Va. 1, 4, 6, 34 S. E. 951, 952 (1900), an instruction had been granted permitting the jury, in estimating the plaintiff's damages, to take into consideration "both his physical and mental suffering arising from the injury." The instruction had been objected to on the ground that there was "no evidence that the plaintiff suffered mentally in any way whatever." We approved the instruction, stating:

" . . . We think that where the proof shows that a man is thrown from a telephone pole to the ground, is injured in his arm, hip and back, and is made sick and nervous, has to be taken home in an ambulance, and is unable to sit up in bed for three or four days, *the jury would be warranted in the inference that his condition was attended by some degree of mental suffering.*" [Emphasis added.] 98 Va., at 6, 34 S. E., at 952.

In *Perlin* v. *Chappell,* 198 Va. 861, 96 S. E. 2d 805 (1957), we had before us an instruction permitting the jury to consider the mental suffering of the plaintiff. We disapproved the instruction because its extensive language unduly emphasized the element of mental suffering and made the instruction argumentative and repetitious. We said, however, in the course of the discussion that "[o]f course mental suffering when proved *or fairly inferred* from injuries sustained is an element of damages." [Emphasis added.] 198 Va., at 868, 96 S. E. 2d, at 811.

Thus, it is well settled in this jurisdiction that mental anguish may be inferred in those instances where such would be the natural and probable consequence of bodily injury and that it is error in such a situation to refuse to instruct the jury that it may consider mental anguish as an element of damages.

Here, viewing the evidence in the light most favorable to the plaintiff, it is reasonable to state that he sustained, in the accident in question, an aggravation of his pre-existing hip injury, causing severe pain and marked loss of motion. He became restless, unable to sleep, and hampered in his employment. He was required to undergo additional treatment and to take "pain pills." The plaintiff also sustained an injury to his neck, causing pain and requiring treatment of an unpleasant nature.

From all of this, the jury would have been justified in inferring

that the plaintiff endured mental anguish as the result of his injuries and would have been warranted in awarding a reasonable amount to cover that element of damages. It was error, therefore, to withhold the element of mental anguish from the jury's consideration.

[2] But, the defendant argues alternatively, if the plaintiff was entitled to any instruction at all on the mental aspect of his injuries, the instruction should have included only the element of mental suffering and not mental anguish. The defendant says that "[t]o infer mental suffering under proper circumstances from a given injury might be correct, but to infer mental anguish from the same injury is something different."

We find the defendant's argument to be without merit because if there is in the law a distinction between mental anguish and mental suffering, it is, so far as this type of case is concerned, a distinction without a difference.

We have examined many cases, including our own and those from other jurisdictions, in an unsuccessful attempt to find some basis for the distinction contended for by the defendant. Contrary to that contention, the phrases "mental anguish" and "mental suffering" appear from the decisions to be used interchangeably and to be taken as synonymous, one with the other.

One of our cases is typical of those displaying the interchangeability of the phrases "mental anguish" and "mental suffering." *Sanford* v. *Ware*, 191 Va. 43, 60 S. E. 2d 10 (1950), involved an action for damages for the negligent handling by the defendant undertaker of the body of the plaintiff's deceased husband. The question was whether the plaintiff was entitled to recover for the mental suffering undergone in addition to the pecuniary loss sustained as the result of the defendant's negligence. We held that the plaintiff was entitled so to recover, and we approved an instruction submitting for the jury's consideration the element of mental suffering. In discussing that element, the phrases "mental anguish," "mental pain and suffering," and "mental pain and anguish" were freely substituted for "mental suffering" throughout the opinion.

In reference works, we find the same situation. 22 Am. Jur. 2d, Damages, § 195, p. 274, speaks in the same breath of "mental anguish or suffering" as related to physical injury. 25 C. J. S., Damages, § 63, p. 815, affords equal meaning to the phrases "mental anguish" and "mental suffering" in a section entitled "Mental Pain and Suffering" as elements of damages for physical injury. And an annotation in 23 A. L. R. 361 equates "mental anguish" with "mental suffering" in a

discussion of certain instances where damages for mental anguish alone are recoverable.

Before leaving the instruction phase of the case, we should comment upon the fact that in the instruction on damages offered by the plaintiff, the elements of physical pain and mental anguish were listed in separate paragraphs, independent of each other.

Since, in this type of case, physical injury generally is a necessary concomitant of mental anguish, the listing of the element of mental anguish in a separate paragraph might well run into the same objection of undue emphasis as was sustained to the instruction in *Perlin v. Chappell, supra,* 198 Va. 861, 96 S. E. 2d 805.

To avoid that possibility, we believe the better practice, where the granting of an instruction on mental anguish may be appropriate, is to link the elements of physical pain and mental anguish in the same paragraph of an instruction, as suggested by Doubles, Emroch, and Merhige in their Virginia Jury Instructions, Vol. 1, § 23.01, p. 148, or in the same clause in a sentence of an instruction, as suggested by Abbott and Solomon in their Instructions for Virginia and West Virginia, 2d ed., Vol. 2, § 39-113, p. 747.

[3] We turn now to the assignment of cross-error relating to the trial court's action in striking the defendant's evidence.

The defendant testified on her own behalf that she followed the Bruce vehicle, in which the plaintiff was a passenger, along the entrance road to Military Highway. When the other car stopped at the yield sign, she stopped behind it. She saw the Bruce automobile move forward and, while looking to her left for traffic on the main highway, advanced to the yield sign, and again stopped. Still looking to her left, she saw that the right lane of the main road was clear, "hit the accelerator," moved forward, and struck the rear of the Bruce car which, unknown to her, "had pulled up further and stopped." The defendant finally stated, "I didn't even know I hit her until I heard the crash."

Thus, the defendant, while looking to her left, pulled from a stopped position, advanced to the yield sign, stopped again, moved forward, and struck the Bruce vehicle, without ever looking to the front for possible danger. We agree with the trial court that such action constituted negligence as a matter of law.

For the error in striking the element of mental anguish from the damage instruction offered by the plaintiff, the judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded for a new trial limited to the issue of damages alone.

*Reversed and remanded.*